607 F.2d 1237
 79-2 USTC P 9578, Bankr. L. Rep. P 67,244
 In the Matter of SOUTHWEST RESTAURANT SYSTEMS, INC., an
Arizona Corporation, d/b/a Pinnacle Peak Patio, Debtor.
John EVANS, Trustee, Plaintiff-Appellee,
v.
INTERNAL REVENUE SERVICE, Defendant-Appellant.
 No. 77-2014.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 5, 1979.
Rehearing Denied Oct. 16, 1979.
 
 Joseph B. Miller, Miller, Mark & Seidel, Phoenix, Ariz., Ronald E. Warnicke, Phoenix, Ariz., for defendant-appellant.
 Jack E. Evans, Phoenix, Ariz., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before TUTTLE,* DUNIWAY and ELY, Circuit Judges.
 TUTTLE, Senior Circuit Judge:
 
 
 1
 The Internal Revenue Service appeals from a decision by the district court that Southwest Restaurant Systems, Inc., the debtor for whom Evans is the trustee in bankruptcy, was not an "employer" within the meaning of § 3401(d)(1) of the Internal Revenue Code of 1954, and therefore was not liable for the federal income withholding, Federal Insurance Contributions Act taxes, and Federal Unemployment Tax Act taxes of Sahara Caterers, Inc., Southwest Restaurant Management, Inc., and Neptune's East, Inc. for the year 1974.
 
 
 2
 The debtor and the three other corporations were four separately organized corporations, whose ownership was largely held by two persons who are the president and treasurer of all four. Each of the corporations operated a separate restaurant within or near the city of Phoenix, Arizona. Beginning in 1972, the accounting methods and financial controls of these corporations were consolidated by a certified public accountant. Under this system, the accounting, bookkeeping and finances of all four corporations were handled by one bookkeeper, Kitty Davis. The sales receipts of each corporation were deposited daily in a general expense bank account maintained by that separate corporation. From these accounts, Davis paid the expenses of each corporation except the employees' wages. Davis and the president and treasurer each had signature authority over each of these accounts. The wages of the employees of all four corporations, on the other hand, were paid from one payroll bank account, according to a computer printout, maintained by the debtor. The same three persons had signature authority with this bank account, although the checks were issued over Davis' signature.
 
 
 3
 This payroll bank account was funded by checks which were drawn by Davis against the general expense bank accounts of each corporation. She would transfer funds from "whichever account had any money in it" to the payroll account maintained by the debtor to pay the wages of the employees of all four corporations. In 1974, payments from the debtor's account to pay the employees of the other three corporations exceeded funds which were drawn for that purpose from the other corporations, creating inter-company indebtedness from those companies to the debtor.
 
 
 4
 In addition to keeping the books and records of all four corporations, Davis computed the payroll for the employees of all of the corporations from timecards sent by each restaurant to her. All employees of all four corporations were paid a uniform pay scale, according to the job performed. The computed payroll sheets would then be submitted to a computer service which printed the salary checks in the names of the individual employees, payable by the debtor, bearing the computerized signature of Davis. These checks would then be turned over to someone from each restaurant for distribution to the employees.
 
 
 5
 Form W-2 reporting the amount of taxes withheld from an employee's wages was prepared in the name of the debtor for each employee of all four corporations and this form was distributed to the employees by the debtor. Davis prepared and filed, in the name of the debtor, the employer's quarterly federal tax return (form 941) for the first and second quarters of 1974, reporting the withholding tax liabilities of all four corporations, amounting to $66,407.16 and $67,925.43 respectively. These taxes were not paid. Davis testified that this was due to the fact that the corporation's suppliers had placed them on a cash basis and most of the cash was paid out to suppliers. The remaining funds which had been transferred to the debtor's payroll account were only sufficient to cover the net payroll of each corporation. The total amount was subsequently reduced by payment of $40,000 to the Internal Revenue Service by the president of the four companies.[1]
 
 
 6
 In July 1974, the debtor commenced Chapter XI bankruptcy proceedings which subsequently became a Chapter X proceeding upon filing of a motion to convert by the receiver. The trustee then filed the withholding tax return for the third quarter of 1974, reporting the unpaid employment taxes for all four corporations up to July 25, 1974. The government filed its proof of claim for unpaid employment taxes, asserting that debtor was indebted to the United States for $95,295.39. This claimed liability included withholding FICA taxes for the first quarter of 1974 and $27,925.43 for the second quarter of 1974 together with interest and a small lien filing fee.
 
 
 7
 The trustee filed his objection to this proof of claim, asserting that part of the amount claimed represented "taxes due and owing by other corporations, including Sahara Caterers, Inc., Southwest Restaurant Management, Inc. and Neptune's East, Inc., which are not obligations of the debtor corporation." The IRS subsequently filed an amended proof of claim, increasing the amount to $116,284.24, by reason of the addition of the withholdings for the third quarter of 1974.
 
 
 8
 The issue before the bankruptcy court was whether the debtor was or the separate corporations were the employer or employers liable for the withholding tax.
 
 
 9
 It is clear that under the scheme for the withholding of taxes the common law employer is normally the person who is liable to withhold and to pay over to the Internal Revenue Service both income and FICA taxes. However, under certain unusual circumstances if the common law employer does not have control of the payment of the wages for such services then the person who does have such control steps into his shoes for this purpose. This is made clear by the definition section of the Act which provides:
 
 
 10
 (d) Employer. For purposes of this chapter, the term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that
 
 
 11
 (1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' (except for purposes of subsection (a)) means the person having control of the payment of such wages, and
 
 
 12
 (2) in the case of a person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, the term 'employer' (except for purposes of subsection (a)) means such person.
 
 
 13
 26 U.S.C. § 3401(d)(1).
 
 
 14
 It is to be noted that the critical term in this section is "control of the payment of the wages for such services." It makes no reference to control over the hiring or firing or the performance of services or the fixing of the amount of pay or the terms of payment. However, both the bankruptcy judge and the district court stressed these irrelevant factors as the basis for their conclusion that "many incidents of control, such as hiring and firing and determining the amount to be paid employees, were controlled by the common law employers."
 
 
 15
 The principal case relied upon by the trustee to support its position is Century Indemnity Co. v. Riddell, 317 F.2d 681 (9th Cir. 1963). That case stands for the proposition that in order to satisfy the exception under § 3401(d)(1) for the supplanting of the common law employer by the person "having control of the payment" such person must have sole and legal control over such payment of wages. In Century the question arose because a subcontractor had a joint bank account with the bonding company on its building contract, under the terms of which neither could withdraw funds for the payment of labor or anything else without the joint signature of the other. This court held:
 
 
 16
 Joint control of a trust account into which all contract payments are required to be deposited, even from the inception of a contract job as in this case, which still leaves the common law employer in control of all the incidents of employment except the requirement of the concurrence of its bonding surety on checks for withdrawals from such account, does not have the dual effect required by Section 1621(d)(1) (now § 3401(d)(1)) of establishing (1) that the contractor 'does not have control of the payment of the wages', and (2) that the surety, whose concurrence is required, does have such 'control of the payment of such wages.' Here, neither has sole control, but neither is the subcontractor without any such control.
 
 
 17
 317 F.2d at 691.
 
 
 18
 Here, of course, there was no shared control; the debtor alone controlled. In addition to this difference, we must note that the Supreme Court has dealt with this section of the Code since the Century case in Otte v. United States, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974). In Otte the question was whether a trustee in bankruptcy was required to make appropriate withholdings when making payment of wage claims representing wages earned before bankruptcy. In speaking of § 3401(d)(1) the Court said: "This obviously was intended to place responsibility for withholding at the point of control." 419 U.S. at 50, 95 S.Ct. at 253. The reason for this is clear. No one other than the person who has control of the payment of the wages is in a position to make the proper accounting and payment to the United States. It matters little who hired the wage earner or what his duties were or how responsible he may have been to his common law employer. Neither is it important who fixed the rate of compensation. When it finally comes to the point of deducting from the wages earned that part which belongs to the United States and matching it with the employer's share of FICA taxes, the only person who can do that is the person who is in "control of the payment of such wages." In point of fact, the Court stated in Otte that it was immaterial whether the Court decided that the bankruptcy judge, or the trustee or the bankrupt's estate itself was the statutory employer. The Court cited United States v. Fogarty, 164 F.2d 26, 32 (8th Cir. 1947) for the proposition that "there is no provision excepting a court from the requirement of withholding on amounts paid an employee." We offer this comment to indicate that there is nothing inequitable in the placing of such a burden upon a corporation which voluntarily places itself in the position of handling the wages and reporting the amounts due under the taxing statutes but which then fails to deduct and remit the amounts required by law.
 
 
 19
 We conclude that the trial court erred in its determination that the debtor did not have "control of the payment of such wages" within the meaning of this statute. Because we find that § 3401(d)(1) is fully applicable here, we need not, and do not, consider the government's alternative argument that the debtor is also liable under 26 U.S.C. § 3505.
 
 
 20
 The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Honorable Elbert P. Tuttle, Senior U.S. Circuit Judge, United States Court of Appeals, 5th Circuit, sitting by designation
 
 
 [1]
 Because of our decision that the debtor is an employer and liable as such under § 3401(d)(1) of the Internal Revenue Code, it is unnecessary for us to consider the parties' arguments about the government's application of this $40,000 payment