L. Karl **KITTLAUS,** Plaintiff–Appellee,

v.

**UNITED STATES of America,**
Defendant–Appellant.

No. 94–1649.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1994.

Decided Nov. 30, 1994.

**328**

Mark R. Ordower (argued), Chicago, IL, for plaintiff-appellee.

Charles E. Ex, Asst. U.S. Atty., Criminal Div., Chicago, IL, Gary R. Allen, Charles E. Brookhart, Kenneth L. Greene, S. Robert Lyons (argued), William J. Patton, Charles J. Cannon, Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for defendant-appellant.

Before CUMMINGS, FERGUSON * and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

In April 1990 L. Karl Kittlaus brought a complaint against the United States for the refund of $32,264.03 in employment and federal income taxes he paid to the Internal Revenue Service.[1] Magistrate Judge Rosemond received the case in December 1990, and in January 1994 granted plaintiff's motion for summary judgment and simultaneously denied the government's. In March 1994 the government filed a notice of appeal.

*Facts*

According to the undisputed facts, plaintiff was one of the general partners in Inn Investors No. 1 ("Inn Investors"), a limited partnership organized in October 1982 to acquire, operate and ultimately sell the Stillwater Ramada Motel in Stillwater, Oklahoma (the "Stillwater Ramada"). In November 1982 Inn Investors executed a management agreement with Hospitality Consultants of Oklahoma, Inc. ("HCI"), assigning to HCI the sole right to supervise and direct the management and operation of the Stillwater Ramada.

Under the terms of the management agreement, HCI bore complete responsibility for hiring, discharging, promoting and supervising the Stillwater Ramada's executive staff and the other operating and service employees of the motel. Article 2.7 of the agreement provided that apart from the motel's general manager and comptroller, "all employees of the [Stillwater Ramada] shall be employees of [Inn Investors]." The agreement directed HCI to compensate these employees, including "employers contribution of F.I.C.A., unemployment compensation, or other employment taxes * * *," as agent of and on account for the partnership. HCI was to draw these funds from bank accounts held in HCI's name, "as agent for [Inn Investors]."

The management agreement precluded Inn Investors from involvement in the day-to-day operation of the Stillwater Ramada, although it entitled the partners to consult regularly with the HCI president or executive officers. In return for its services, HCI drew a management fee consisting of 5% of the motel's gross revenues.

Perkins Road Development, the mortgagee of the Stillwater Ramada, retained power under the mortgage instrument to order Inn Investors to replace the management agent in certain circumstances. Perkins Road exercised this right in early 1984, and Inn Investors replaced HCI with Brandis Management Co. Brandis managed the Stillwa-

---

* The Honorable Warren J. Ferguson of the United States Court of Appeals for the Ninth Circuit is sitting by designation.

1. An amended complaint was filed in June 1990 merely to show that plaintiff had filed three claims for refund on July 8, 1988, rather than one.

ter Ramada from 1984 until it was transferred to Perkins Road in lieu of foreclosure.

In March and September 1985 and January 1986, the IRS assessed unpaid employment and withholding taxes—from the last quarter of 1983 and the first and second quarters of 1984—against Inn Investors for the Stillwater Ramada's employees. At least some of the tax returns at issue bore the name and, according to the government, the employer identification number for Inn Investors.[2] When Inn Investors failed to pay the assessed taxes, the IRS levied on plaintiff's Chicago condominium on the ground that he was a general partner of the partnership and liable for its debts.

Plaintiff thereafter paid $32,264.03 to the IRS to satisfy the levy. He subsequently brought this refund suit claiming that Inn Investors was not the employer of the motel's workers, so that neither he nor the partnership was liable for the assessed taxes.[3] The magistrate judge agreed, finding that the management agent, not Inn Investors, had "the exclusive right to hire, discharge, and set the wages of the Stillwater Ramada's workers, and administer the payroll and disbursement of [their] wages and salaries" (Gov.Br.App. 10) and was therefore the employer for withholding purposes. The magistrate judge rejected with little discussion the government's argument that since HCI and later Brandis acted as Inn Investors' agent, the partnership as principal was liable for the management agent's acts and accordingly liable for the unpaid taxes.

*Partnership's liability as employer*

The Internal Revenue Code states clearly that the employer bears responsibility for withholding and paying income and employment taxes. See 26 U.S.C. § 3402 (requiring employers to withhold income taxes for employees); 26 U.S.C. §§ 3101, 3111 (social security taxes). The question raised by this appeal concerns the actual identity of the employer: was it the management agent or the partnership?[4]

The Code defines "employer" in the following way:

> **(d) Employer.**—For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—
>
> > (1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" (except for purposes of subsection (a)) means the person having control of the payment of such wages.

26 U.S.C. § 3401(d)(1).

The government and the plaintiff disagree on the import of this Code language. The plaintiff contends that the management agent, which obviously had "control of the payment of the wages" in that it actually paid them, bore the ultimate responsibility and liability for any tax deficiency regardless of Article 2.7's statement in the management agreement that Inn Investors was the employer. The government argues that "control of the payment of the wages" refers to legal control, and that the partnership possessed this control largely because of its ability to fire the management agent.

■ We disagree with the government. The partnership had very limited access to the funds used to pay employees, which were largely generated from motel revenues. The management agent had authority to pay all costs and expenditures, including employee compensation and their own management fee, out of these accounts. The partnership could request disbursement to them only of

---

2. Plaintiff disputes this contention (Br. 1, 6–7).

3. Plaintiff contended in the alternative that even if the partnership was the employer and liable for the assessed taxes, he could not be held liable for the partnership's debt. The magistrate judge rejected this argument; because we affirm the summary judgment, we need not reach plaintiff's alternative argument on appeal.

4. Contract language nominally designating the partnership as the "employer" of the inn's employees is not dispositive in this case, which is governed by the Internal Revenue Code. The Code provides its own definition of "employer" for purposes of tax withholding—the entity having control of the wages—and does not rely on contractual designations. See 26 U.S.C. § 3401(d).

amounts exceeding working capital; the plaintiff had no signature authority over the accounts.

Regardless of how "control" is defined, it is clear that the management agent, not the partnership, possessed it over the payment of wages. The exception laid out in § 3401(d)(1) thus governs, and the only logical conclusion is that the management agent, rather than Inn Investors, was the liable employer. See *Matter of Southwest Restaurant Systems, Inc.*, 607 F.2d 1237, 1240 (9th Cir.1979) (holding that "[n]o one other than the person who has control of the payment of the wages is in a position to make the proper accounting and payment to the United States").[5]

This conclusion is borne out by the degree of physical control the management agent exercised over all facets of the Stillwater Ramada operation. As the magistrate judge noted, the management agent had "the exclusive right to hire, discharge, and set the wages of the Stillwater Ramada's workers, and administer the payroll and disbursement of [their] wages and salaries" (Gov.Br.App. 10). The agreement between Inn Investors and HCI granted to the latter near-absolute "control and discretion in the operation, direction, management and supervision of the Property" necessary to facilitate the service (Gov.Br.App. 3). Inn Investors had no opportunity to control the daily discretionary decisions of the management agent regarding motel employees, and had as a practical matter no contact with these employees. See *Arthur Venneri Co. v. United States*, 340 F.2d 337 (Ct.Cl.1965). In *Venneri*, the plaintiff contractor Venneri supplied the subcontractor's payroll funds and had the right to issue some general orders. Nevertheless, because Venneri had no authority to choose or fire any of the subcontractor's employees, the court held that Venneri could not be designated their employer for employment tax purposes. Under *Venneri*, a management agent's physical autonomy and sole control of the employees make him responsible for tax withholding.

*Partnership's liability as principal*

The government attempts to circumvent the partnership's demonstrated lack of control over either the payment of wages or the employees themselves by arguing that plaintiff's tax liability stems from its agency relationship with the management agent. Under what it deems to be "hornbook" agency law, the government claims that the partnership as principal must take responsibility for the acts and omissions of its agent. The government points to 26 U.S.C. § 3504, which provides that where an agent has control over an employee's wages, "all provisions of law" are applicable to both the agent and "the employer for whom such * * * agent acts."

What the government ignores, however, is that hornbook agency law clearly distinguishes between agents who are employees of the principal and agents who act as independent contractors. The Restatement Second of Agency explains that:

> An agent may be one for whose physical acts the employer is not responsible and who is called an independent contractor in order to distinguish him from a servant, also an agent, for whose physical acts the employer is responsible.

Restat.2d Agency § 1, Comment to subsection (3).

Thus the mere fact that the agreement designated HCI and later Brandis as the "agent" of the partnership, and directed the management agent to perform certain acts "as agent of and on account for" the partnership, is not, as the government contends, dispositive. See *Southern Indiana Gas and Elec. Co. v. United States*, 79–1 U.S. Tax Cas. (CCH) P9302, 1978 WL 1277 (S.D.Ind. Dec. 22, 1978).

The government has failed to establish that the management agent acted as Inn Investors' employee. As noted above, Inn Investors did not possess physical control over the activities of the management agent sufficient to establish a master-servant, rath-

---

**5.** In addition to *Southwest Systems*, see *In re Freedomland, Inc.*, 480 F.2d 184, 187 (2d Cir. 1973), affirmed 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212; *In re Armadillo Corp.*, 410 F.Supp. 407, 411 (D.Colo.1976), affirmed 561 F.2d 1382 (10th Cir.1977); Rev.Rul. 70–266, 1970–1 C.B. 204 (1970).

er than independent contractor, relationship. The government cannot rely on agency law to bootstrap it over the hurdle posed by § 3401.

Nor can the government rely on § 3504. Although that provision appears to extend tax liability beyond agents to their principals, it does so only to "employers" of employees. As noted above, Inn Investors does not meet the statutory definition of "employer" for purposes of this case.

*Identity of party filing tax returns*

Finally, the government argues that as a policy matter, we should consider the fact that Inn Investors' name and possibly its employer identification number appeared on the disputed quarterly federal tax returns. The return was ostensibly filed on behalf of, and in the name of, the partnership, and the government states that "it is imperative that the IRS be able to rely on returns and the representations made therein" (Gov.Br. 23) (citation omitted).

Plaintiff contends that the partnership had a different employer identification number than the one listed on the tax return, and submits without contradiction that "an Employer's Quarterly Tax Return was never filed under the Employer Identification Number of the partnership" (Br. 2, 6–7). While the confusion occasioned by these conflicting identification numbers is somewhat troubling, it does not outweigh the clear mandate of the Internal Revenue Code and relevant case law to place the onus for tax withholding on the party in the best position to perform the task.

*Conclusion*

The United States Supreme Court has pointed out that the language of § 3401 places "responsibility for withholding at the point of control." *Otte v. United States*, 419 U.S. 43, 50, 95 S.Ct. 247, 253, 42 L.Ed.2d 212. Looking to the partnership to fulfill this responsibility would frustrate the purposes of the Internal Revenue Code. As plaintiff points out, the government should have made its assessment against the management agent instead of against him (Br. 12). This Court cannot stretch the facts to permit the government to recover from the wrong party.

The summary judgment for plaintiff is affirmed.

FERGUSON, Circuit Judge, dissenting:

This case is straight forward and should not cause the problems that it has. A partnership was organized to acquire, operate and eventually sell a motel. The partnership entered into a written agreement with a management firm (HCI) to operate the motel. The agreement is detailed and contains in specific terms the rights and duties of the parties with regard to all matters concerning the ownership and operations of the motel. There is no question that the contract was negotiated in good faith between experienced business persons. There is no contention that the words used were not understood or were ambiguous, or need not be relied upon. Where a contract provision is "made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1971).

The Internal Revenue Code ("I.R.C.") requires employers to withhold certain taxes from their employees' salaries. The agreement between the partnership and the management company provides that the partnership is the employer of the motel's staff and that all compensation to the staff shall be paid by the management company as agent of and on account for the partnership:

2.7 *Owner as Employer.* Except as provided in Section 2.8 below, all employees of the Property shall be employees of OWNER, and all compensation of such employees shall be paid by HCI as agent of and on the account for OWNER.

2.8 *Employees of HCI.* The general manager and the controller or any other employee employed at the Property and Motel that HCI may so designate shall be employees of HCI. In addition, HCI may assign other employees of HCI and its affiliates, not employed at the Property prior to such assignment, as members of the staff of the Motel. All such HCI employees will be paid HCI regular

Compensation, and HCI will be reimbursed by OWNER therefore as provided in 2.11(b). (capitalization in original) The I.R.C. establishes that the employer for whom a fiduciary or agent acts remains subject to the provisions of the law, including penalties. 26 U.S.C. § 3504.

The majority ignores the uncontroverted language of the agreement and moves to an examination of the daily operations of the motel. The majority finds the partnership's lack of "physical control" and "opportunity to control the daily discretionary decisions of the agent" to be dispositive. Although extrinsic evidence may be considered to determine whether or not a contract is ambiguous, *Sunstream Jet Exp. v. International Air Service Co.*, 734 F.2d 1258, 1268 (7th Cir. 1984), no such analysis is required here. The contract is comprehensive and the language is unambiguous. When someone agrees to assume responsibility, the duty of the courts is not to find a way out of enforcing that responsibility, but to enforce the clear words which create that obligation. *M.S. Bremen*, 407 U.S. at 12, 92 S.Ct. at 1914.

The majority cites for its assertion that the partnership is not liable for the taxes the rule that an agent who is called an independent contractor is one for whose physical acts the employer is not responsible. That rule is irrelevant in the face of clear contractual language, negotiated by experienced business people in an arm's-length transaction setting forth the legal duties of the parties. The contract language is dispositive.

In addition, the cases cited by the majority do not deal with contracts where the parties set forth their legal relationships in positive detail. In *Venneri*, for example, the original subcontracting agreement was modified when the subcontractor had difficulty meeting his payroll. As a result of subsequent riders and an appended financing agreement, the employee/independent contractor distinction was called into question. *Arthur Venneri Co. v. U.S.*, 340 F.2d 337 (Ct.Cl.1965). Similarly, in *Southwest Restaurant*, the question concerning the identity of the employer arose because the wages of the employees of four corporations were paid from one payroll bank account. *Matter of Southwest Restaurant Systems, Inc.*, 607 F.2d 1237, 1238 (9th Cir.1979). This case does not pose such problems. The partnership and the management firm knowingly bound themselves in explicit language and the partnership must now bear the legal responsibility it agreed to assume.

The reliance of the majority upon other provisions in the contract pertaining to the rights and responsibilities of the management agent address other issues and have no bearing upon the interpretation of the explicit language designating the partnership the employer and the management company as agent. As the employer, the partnership is responsible for the unpaid taxes.

I would reverse and require judgment to be entered in favor of the United States.