James G. O'CALLAGHAN, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 95 Civ. 10260 (HB).

United States District Court,
S.D. New York.

Oct. 17, 1996.

Gerald Padian, Tashjian & Padian, New York City, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York (Jonathan A. Willens, of counsel), New York City, for Defendant.

## OPINION AND ORDER

BAER, District Judge:

Defendant, United States of America, has moved for summary judgment dismissing plaintiff's complaint and in favor of its counterclaim. For the reasons that follow, defendant's motion is GRANTED.

### Background

This case involves employment withholding taxes owed by a company known as Cafe Society, Inc. Cafe Society was formed to operate a restaurant and cabaret located at 915 Broadway in New York City. Plaintiff, James O'Callaghan, first invested in Cafe Society in October 1986 when he purchased 100 shares for a 2.7% ownership stake. In April 1987, plaintiff became president of Cafe Society. In November, 1987, he began to increase his investment. His investment ultimately totaled $1.5 million such that he owned 41% of the company.

In April 1987, Cafe Society retained 915 Broadway Restaurant Corporation to manage the restaurant. The plaintiff contends that 915 Broadway was hired by A.M. Stern, not him. Pl.Rule 3(g) Statement at ¶ 9. However, plaintiff does not dispute that he signed the contract between Cafe Society and 915 Broadway on behalf of Cafe Society. See O'Callaghan Dep., Ex. F. In January 1991, Cafe Society terminated the management agreement with 915 Broadway based on its suspicions that the management firm

was stealing from the restaurant. Della–Man Security Inc. ("Dellaman") was then hired to manage Cafe Society. In his Rule 3(g) Statement, plaintiff contends that Cafe Society hired Dellaman. Pl.Rule 3(g) Statement at ¶ 10. Again, however, it is undisputed that the letter agreement between the two firms was executed by O'Callaghan on behalf of Cafe Society. O'Callaghan Dep. at 52, Ex. I. Under this contract, Dellaman could not incur any expenses greater than $500 without O'Callaghan's approval. Pl.Rule 3(g) Statement at ¶ 11.

Plaintiff apparently had no responsibility for the day-to-day management of Cafe Society. All of this was handled by Dellaman and Cafe Society's employees hired by Dellaman. With the exception of three checks written in 1987, plaintiff did not execute any checks drawn on Cafe Society bank accounts. O'Callaghan, however, was the sole authorized signatory on Cafe Society's primary operating account maintained at Merchants Bank. Checks issued by Cafe Society were signed using a facsimile rubber stamp of O'Callaghan's signature. In addition, in July 1987 plaintiff obtained a $500,000 loan on behalf of Cafe Society.[1]

In August 1992, plaintiff learned that Cafe Society had not paid all of the employee withholding taxes that were due to the Internal Revenue Service. On August 20, 1992, Cafe Society filed for bankruptcy under Chapter 11 of the Bankruptcy Code. At this time, Cafe Society's bookkeeper, Carol Trouche, informed plaintiff that Cafe Society's tax liability was at least $40,000. On August 18, the IRS filed a Notice of Federal Tax Lien against Cafe Society reflecting an unpaid assessment of $319,279.43.

Cafe Society was closed from July 1992 to September 28, 1992, when it reopened and operated until December 31, 1992. Upon learning of the tax problem, plaintiff asked Cafe Society's bankruptcy attorney, William Kaye, to ensure that the tax liabilities were paid. Plaintiff claims that Kaye repeatedly assured him that the payments were being made.

The IRS issued a tax assessment of $98,-363.50 against O'Callaghan on January 2, 1995 for unpaid employee tax withholdings. This assessment differs from the August 18, 1992 assessment against Cafe Society in part because a payment had been made to reduce the withholding tax liability and in part because the corporation was liable for certain taxes for which O'Callaghan was not responsible. Plaintiff paid $21.42 of this assessment on September 29, 1995. Subsequently he brought this action seeking a refund and a declaratory judgment and injunction to abate the IRS assessment. The United States counterclaimed seeking the unpaid taxes and interest from January 2, 1995. The defendant has now moved for summary judgment.

## Discussion

### I. Summary Judgment

Summary judgment is appropriate where there are no disputed issues of material facts and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2nd Cir.1995). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is genuine issue for trial.'" *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *Tomka,* 66 F.3d at 1304.

### II. Statutory Background

Under the Internal Revenue Code, employers are required to withhold federal income and social security taxes from their employees' wages. Employers must keep

---

1. Plaintiff disputes the United States' assertion that he personally guaranteed this loan, but not that he obtained it in his capacity as president of Cafe Society. *See* Pl.Rule 3(g) Statement at ¶ 8.

the withheld funds "in trust for the United States," 26 U.S.C. § 7501(a), and pay them to the IRS on a quarterly basis. *Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir.1993).

An employer who fails to pay the withheld funds is liable for their payment. In addition, an individual who is responsible for the tax delinquency may be held personally liable. 26 U.S.C. § 6672(a) provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat such tax or the payment thereof, shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

"Under this section, a party may be held liable for unpaid taxes if: first, he is the 'responsible person' for collection and payment of the employer's taxes, and second, he 'willfully' failed to comply with the statute." *Fiataruolo*, 8 F.3d at 938 (citation omitted). An individual against whom the IRS has issued an assessment has the burden of proving, by a preponderance of the evidence, that either he was not a responsible person or that he did not willfully fail to cause the tax payments to be made. *United States v. Rem*, 38 F.3d 634, 643 (2d Cir.1994) *Fiataruolo*, 8 F.3d at 938. Summary judgment is appropriate where there are no questions as to either of these issues. *Rem*, 38 F.3d at 644.

### A. Responsible Person

The determination of whether an individual qualifies as a responsible person "is based upon the individual's 'status, duty and authority' to insure compliance with the employer's tax withholding obligations." *Fiataruolo*, 8 F.3d at 939 (quoting *Raba v. United States*, 977 F.2d 941, 943 (5th Cir. 1992)). "[C]ourts generally take a broad view of who qualifies as a responsible person." *Id.* The court's focus is on " 'whether the individual has significant control over the enterprise's finances.' " *Id.* (quoting *Hochstein v. United States*, 900 F.2d 543, 547 (2d Cir.1990), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2967, 119 L.Ed.2d 587 (1992)). A party has "significant control" if he is " 'connected closely enough with the business to prevent the [tax] default from occurring.' " *Id.* (quoting *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir.1992). Mere technical authority or titular designation is insufficient to warrant a finding of responsibility. *Id.*

There may be several responsible parties within a given business. The proper inquiry looks to whether an individual had sufficient authority in the company such that he could have avoided the tax delinquency. Thus, delegation of responsibility will not relieve an otherwise responsible person of liability. *Id.; Barnett v. Internal Revenue Service*, 988 F.2d 1449, 1455 (5th Cir.), *cert. denied*, 510 U.S. 990, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993).

To decide if an individual had significant control over a company, courts consider whether the individual:

> (1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and has check signing authority.

*Fiataruolo*, 8 F.3d at 939; *see also Rem*, 38 F.3d at 642. The determination must be made in light of the totality of the circumstances; no single factor is dispositive. *Id.* at 642.

Under this analysis, I conclude that O'Callaghan was a responsible person as a matter of law during all of the relevant tax periods. He has failed to demonstrate the existence of a genuine issue as to whether he is a responsible person.

First, he was president of Cafe Society and owned 41% of the firm. Next, it is undisputed that O'Callaghan obtained a $500,000 loan on behalf of Cafe Society. This authority to borrow indicates that O'Callaghan was a responsible person. *See Jenson v. United*

*States,* 23 F.3d 1393, 1395 (8th Cir.1994). In addition, O'Callaghan was the sole authorized signatory on Cafe Society's primary operating bank account and all checks were executed using a facsimile rubber stamp of his signature. Further, he was involved in the firing of 915 Broadway and the hiring of Dellaman as management firms for Cafe Society. This demonstrates that O'Callaghan had authority to hire and fire employees, even though he apparently never involved himself in the employment decisions regarding individual employees. Finally, the fact that he told Kaye, the bankruptcy attorney, to ensure that all tax liabilities were paid indicates that he had the authority to determine which creditors should be paid and in what order.

O'Callaghan had but a small role in the day-to-day management of Cafe Society and did not exercise daily control over Cafe Society's bank accounts. However, the agreement with Dellaman gave O'Callaghan some control over the expenses incurred by Dellaman. In addition, plaintiff's minor role in the actual management of Cafe Society cannot avoid his liability. *Purcell v. United States,* 1 F.3d 932 (9th Cir.1993), is instructive on this issue. In *Purcell,* the Ninth Circuit affirmed a directed verdict against the plaintiff where he was the company's president, sole shareholder and only authorized signatory on the company's checking account. *Id.* at 937. It was undisputed Purcell had delegated all responsibility for financial matters to an associate. According to the court, however, "[t]hat an individual's day-to day function in a given enterprise is unconnected to financial decision making or tax matters is irrelevant where that individual has the authority to pay or to order the payment of delinquent taxes." *Id.*

Plaintiff's reliance on *Kittlaus v. United States,* 41 F.3d 327 (7th Cir.1994), is misplaced. Kittlaus was a general partner in a partnership organized to acquire and operate a motel. The partnership hired a management firm to run the motel. Unlike this case, however, the management agreement in *Kittlaus* precluded the partnership from involvement in the day-to-day affairs of the motel and limited its access to the funds used to pay the employees. Further, Kittlaus had no signature authority over any of the motel's accounts. The Seventh Circuit found that the management firm was the employer responsible for payment of withholding taxes, not the partnership.

Drawing all inferences in O'Callaghan's favor, as I must on this motion, I find that the management agreements here did not completely derogate O'Callaghan's authority as in *Kittlaus.* In contrast to *Kittlaus,* O'Callaghan retained check writing authority and all Cafe Society checks were signed using a facsimile rubber stamp of his signature. Further, O'Callaghan was not precluded from all day-to-day involvement with the Cafe Society; that was his choice.

I conclude that O'Callaghan has failed to demonstrate a genuine issue for trial as to whether he was a responsible person during any of the relevant tax periods.

**B. Willfulness**

 To be held liable under § 6672, a responsible person's failure to ensure that withholding taxes are paid must have been willful. Willfulness in this context does not require an "'evil motive or intent to defraud.'" *Rem,* 38 F.3d at 643 (quoting *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975)). Rather, willfulness only requires a "voluntary, conscious, and intentional act." *Barnett,* 988 F.2d at 1457; *Kalb,* 505 F.2d at 511. "The principal component of willfulness is knowledge: a responsible person acted willfully within the meaning of § 6672(a) if he (a) knew of the company's obligation to pay withholding taxes, and (b) knew that company funds were being used for other purposes instead." *Rem,* 38 F.3d at 643. Withholding taxes are to be held in trust for the government and may not be used to finance the company. The government cannot be forced to act as a business partner with a delinquent taxpayer and bear the risk of nonpayment of trust funds. *See Thibodeau v. United States,* 828 F.2d 1499, 1506 (11th Cir.1987); *Kalb,* 505 F.2d at 510.

 Where a responsible person was unaware that the company failed to pay with-

holding taxes as they accrued, he may still be held liable if, after he learned of the delinquency, the company had liquid assets with which to pay the taxes. *Rem,* 38 F.3d at 643. The burden of proving a lack of liquid assets rests on the responsible individual because it is part of the larger willfulness inquiry. *Barnett,* 988 F.2d at 1458.

■ Here, it is undisputed that O'Callaghan learned of Cafe Society's tax liability in August 1992. Therefore, after this point, O'Callaghan "had a duty to ensure that the taxes were paid before any payments were made to other creditors." *Barnett,* 988 F.2d at 1457; *see also Muck v. United States,* 3 F.3d 1378, 1381 (10th Cir.1993) ("[O]nce he learned of the delinquency, plaintiff was obligated to apply unencumbered funds to pay the tax liabilities for the two delinquent quarters as well as any future quarters."). The record establishes that O'Callaghan failed to satisfy this obligation. Instead of ensuring that the government was paid before any other creditors, O'Callaghan permitted the business to continue to operate through December 1992.

O'Callaghan first argues that he told Kaye, Cafe Society's bankruptcy attorney, to monitor the tax payments and that Kaye assured him that the taxes were in fact being paid. O'Callaghan Aff. at ¶ 18. In addition, O'Callaghan testified at his deposition that he told Troche, the bookkeeper, that it was important that the taxes be paid. O'Callaghan Dep. at 79–80. The record is unclear whether Kaye was instructed to pay both past due as well as current tax liabilities, or just to keep current with newly accrued liabilities. Drawing all inferences in plaintiff's favor, I conclude, based on the current record, that O'Callaghan instructed Kaye to pay all tax liabilities. *See also* O'Callaghan Dep., Ex. V, at 5.

The flaw in O'Callaghan's argument, however, is that he knew that the actual responsibility to pay the taxes remained with the same managers and bookkeepers that had previously failed to pay the trust funds. *See* O'Callaghan Dep. at 79. Indeed, plaintiff argues that given the financial condition of Cafe Society, it would have been imprudent to change management. Pl.Mem. at 19.

Further, plaintiff claims that he "had no involvement in the paying of creditors or the allocation of revenues." *Id.* at 21. Even drawing all inferences in his favor, this argument supports the proposition that plaintiff took no additional action beyond his conversations with Kaye and Troche.

■ In such circumstances, his failure to take more affirmative steps to ensure payment of taxes before any other creditors constitutes willfulness as a matter of law. As the Second Circuit held in *Kalb,* "[w]illful conduct ... includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government." *Kalb,* 505 F.2d at 511. "Once a responsible person becomes aware that withholding taxes have not been remitted, he may not fulfill his obligation to address the delinquency by delegating the task to someone who has already proven unreliable or untrustworthy." *Finley v. United States,* 82 F.3d 966, 973 (10th Cir.1996). *See also id.* ("'Should the "responsible person" continue to delegate, without taking appropriate measures to assure that the delegated person will not repeat the dereliction in the future, the subsequent willfulness of the delegatee in once more failing to pay taxes will be imputed to the "responsible person."'" (quoting *Thomsen v. United States,* 887 F.2d 12, 19 (1st Cir.1989))); *In re Gadoury,* No. 95–1872, 1996 WL 83894, at *2 (1st Cir. Feb. 26, 1996) (per curiam) ("As to willfulness, Gadoury admitted that he was aware the taxes were not paid, that he urged them to be paid, but that he failed to take any steps to see that they were in fact paid. There is no more to be said.").

Next, O'Callaghan contends that he believed Cafe Society had no funds to pay any creditors, including the United States. To support this, he notes that he personally paid Kaye with his own funds. He also notes that of the approximately $3 million of assets listed on Cafe Society's bankruptcy petition, only $17,500 were liquid assets. Pl.Rule 3(g) Statement at ¶ 28. These arguments fail to raise a genuine issue of fact as to O'Callaghan's willfulness. First, O'Callaghan has submitted no competent proof as to the exact financial state of Cafe Society in August

1992. Plaintiff's Rule 3(g) Statement does not cite anything in the record as support for its assertion that only $17,500 in assets were liquid. More importantly, plaintiff's Rule 3(g) Statement constitutes an admission that Cafe Society had at least $17,500 in assets that could have been used to reduce its tax liability. The use of these funds to run the business rather than pay the Government constitutes willfulness.

▪ Finally, O'Callaghan claims that he was precluded under the bankruptcy laws from paying the tax liabilities after the bankruptcy petition was filed in August 1992. Although neither party cited to *Kalb* for this proposition, in that case the Second Circuit considered and rejected this argument. The court held that the filing of a Chapter 11 bankruptcy petition does not excuse nonpayment of withholding taxes. As the court explained:

> Herold argues that [after the bankruptcy petition was filed] payment of a preexisting debt was impermissible as a matter of law. However, withholding taxes are not simply a debt. They are part of the wages of the employee, held by the employer in trust for the government. 26 U.S.C. 7501(a) (1970). In paying the taxes over to the government the employer merely surrenders that which does not belong to him. We know of no rule prohibiting such payments by a petitioner under Chapter XI.

*Kalb*, 505 F.2d at 509.

O'Callaghan has failed to raise a genuine issue as to whether he was either a responsible person or that his failure to ensure payment of withholding taxes was willful. Accordingly, the defendant is entitled to summary judgment that O'Callaghan is liable for the tax assessment.

III. Amount of Liability

▪ O'Callaghan also challenges the Government's assessment against him as erroneously calculated. The United States submitted the tax assessment as part of the record on this motion. *See* Declaration of Jonathan A. Willens. This assessment is entitled to a presumption of correctness and a taxpayer bears the burden of proving that the assessment is incorrect. *United States v.*

*McCombs*, 30 F.3d 310, 318 (2d Cir.1994). The taxpayer must prove both that the assessment is erroneous and the correct amount of his tax liability. *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *DeLorenzo v. United States*, 555 F.2d 27, 29 (2d Cir.1977). To create a genuine issue as to the amount of his tax liability, O'Callaghan must point to "specific evidence" that demonstrates the proper amount of his tax liability. *See LaBow v. Commissioner*, 763 F.2d 125, 131 (2d Cir. 1985). Mere "conclusory denials and bald assertions," all that we have here, are insufficient to avoid summary judgment. *Schiff v. United States*, No. N–86–354 (WWE), 1989 WL 119410, at *4 (D.Conn. Sept. 6, 1989), aff'd, 919 F.2d 830 (2d Cir.1990), *cert. denied*, 501 U.S. 1238, 111 S.Ct. 2871, 115 L.Ed.2d 1037 (1991).

O'Callaghan first seeks to create an issue of fact by pointing to a discrepancy between the assessments against him and against Cafe Society. As the United States notes, however, the employer is liable for certain taxes that O'Callaghan is not. Next, plaintiff points to a discrepancy between a February 24, 1994 letter from the IRS to him indicating a zero balance for the period ending June 30, 1991 and a May 25, 1994 letter from the IRS to him indicating an outstanding balance of $2,406.86 for the same period. Plaintiff, though, did not submit any evidence that demonstrates that the $2,406.86 balance for the June 30, 1991 period was incorrect. The fact that at an earlier time the United States had not claimed the $2,406.86 does not, by itself, create an issue for trial as to the validity of the final assessment. Finally, plaintiff claims that the assessment must be reduced because undeclared tips were improperly included in the withholding tax calculation. This allegation is insufficient to create a question of fact because it is not supported by any evidence as to the precise amount of the claimed error.

Conclusion

For the foregoing reasons, defendant's motion is GRANTED. The Clerk is directed to enter judgment in favor of the defendant in the amount of $98,363.50 less the amount of

$21.42 paid on September 29, 1995, plus interest from January 2, 1995.

SO ORDERED.