# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BLUE LAKE RANCHERIA; BLUE LAKE
RANCHERIA ECONOMIC DEVELOPMENT
CORPORATION,
          *Plaintiffs-Appellants,*

          v.

UNITED STATES OF AMERICA,
          *Defendant-Appellee.*

No. 10-15519

D.C. No.
3:08-cv-04206-SC

OPINION

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, Senior District Judge, Presiding

Argued and Submitted
July 11, 2011—San Francisco, California

Filed August 11, 2011

Before: Procter Hug, Jr., Barry G. Silverman, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Silverman

---

**COUNSEL**

Frank R. Lawrence, Kathleen M. Niles, Jonathan E. Strouse (argued), and Zehava Zevit of Holland & Knight LLP, Los Angeles, California, for the plaintiffs-appellants.

John A. DiCicco, Kenneth L. Greene, Patrick J. Urda, and Gilbert S. Rothenberg (argued) of the United States Department of Justice, Tax Division, Washington, DC, for the defendant-appellee.

---

**OPINION**

SILVERMAN, Circuit Judge:

Blue Lake Rancheria, an Indian tribe, seeks a refund of Federal Unemployment Tax Act taxes paid by Mainstay Business Solutions, an employee leasing company wholly owned by the Tribe. Section 3306(c)(7) of Title 26 of the United States Code excepts from the definition of "employment"—and thus exempts from the payment of employment tax—"services performed in the employ of an Indian tribe, or any instrumentality" of a tribe. We hold today that this exception does not apply where a tribe is merely a "statutory employer"—in essence, nothing more than a paymaster. The exception granted by § 3306(c)(7) applies only where a tribe is the common-law employer. However, undisputed facts show that Mainstay was, indeed, the common-law employer of the workers at issue here and, therefore, was entitled to the special tax treatment Congress saw fit to grant to Indian tribes.

## I.　Background

Blue Lake Rancheria is a 53-member, federally recognized Indian tribe located in Humboldt County, California. In May

2003, the Tribe established Mainstay Business Solutions as a for-profit business owned by and operated for the benefit of the Tribe. Mainstay provided employee leasing and temporary staffing for small- and medium-sized businesses located in California, Hawaii, and Nevada. Mainstay contracted with each of its clients to hire the client's employees as its own and then "lease" those employees back to the client. The client supervised the leased employees on a day-to-day basis, but Mainstay paid their wages, provided benefits, and performed other human resources functions. According to Mainstay, this arrangement allowed the client to free itself from H.R. responsibilities and focus on its business, and resulted in better benefits for employees. During the years at issue in this case (2003 and 2004), Mainstay paid wages for approximately 39,000 workers.

Mainstay reported and paid $722,047.77 in FUTA taxes for 2003 and $1,283,892.86 for 2004. Mainstay later filed claims for refunds with respect to these tax payments, asserting that, as a tribally owned business entity, it was exempt from FUTA tax liability under 26 U.S.C. § 3306(c)(7).[1] Having received no formal response from the IRS regarding the refund claims, the Tribe filed suit in the Northern District of California. The complaint sought a full refund of the FUTA taxes paid by Mainstay for 2003 and 2004 ($2,005,939), plus statutory interest.

The Tribe and the United States filed cross-motions for summary judgment. The district court granted the United States' motion for summary judgment and denied the Tribe's motion. The court held that § 3306(c)(7)'s exception for services performed "in the employ of" an Indian tribe applies only where the tribe is a common-law employer. The court further held that the Tribe failed to present facts sufficient to

---

[1]Unless otherwise indicated, all statutory references are to Title 26 of the United States Code.

establish that Mainstay was the common-law employer of the workers in question.

The Tribe now appeals. We have jurisdiction under 28 U.S.C. § 1291.

## II.  Discussion

### A.  Standard of Review

The first question presented by this case—the scope of § 3306(c)(7)'s exception from "employment"—is one of statutory interpretation, which we review de novo. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1399 (9th Cir. 1995).

The second question—whether Mainstay is the common-law employer of its leased employees—is a mixed question of law and fact. *See Chin v. United States*, 57 F.3d 722, 725 (9th Cir. 1995) (citing *Prof'l & Exec. Leasing, Inc. v. Comm'r*, 862 F.2d 751, 753 (9th Cir. 1988)). Where a case turns on a mixed question of law and fact and, as here, the only disputes relate to the legal significance of undisputed facts, "the controversy collapses into a question of law suitable to disposition on summary judgment." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003). We review de novo the district court's decision on cross-motions for summary judgment. *Trunk v. City of San Diego*, 629 F.3d 1099, 1105 (9th Cir. 2011).

### B.  Scope of § 3306(c)(7)'s Exception

**[1]** This case requires us to interpret § 3306(c)(7), which excepts "services performed in the employ of" an Indian tribe from the definition of "employment" for purposes of FUTA. Statutory interpretation begins with the text of the statute itself. *See Brock v. Writers Guild of Am., W., Inc.*, 762 F.2d 1349, 1353 (9th Cir. 1985). The plain meaning of a statute

controls where that text is unambiguous. *See Green v. Comm'r*, 707 F.2d 404, 405 (9th Cir. 1983).

Subtitle C of the Internal Revenue Code governs employment taxes on individuals and their employers. *See* §§ 3101-3510. Subtitle C includes the Federal Insurance Contributions Act (Chapter 21, §§ 3101-3128), FUTA (Chapter 23, §§ 3301-3311), and provisions regarding income tax withholding (Chapter 24, §§ 3401-3406). FUTA funds the joint federal-state unemployment insurance program by imposing an employment tax:

> There is hereby imposed on every employer (as defined in section 3306(a)[2]) for each calendar year an excise tax, with respect to having individuals in his employ, equal to . . . 6.2 percent . . . of the total wages (as defined by section 3306(b)) paid by him during the calendar year (or portion of the calendar year) with respect to employment (as defined in section 3306(c)).

§ 3301. The FUTA tax applies only to the first $7,000 an employer pays to each employee during the year. § 3306(b)(1). Employers may take a credit against the tax for amounts paid to state unemployment funds, reducing the minimum effective FUTA tax rate to 0.8%. § 3302.

---

[2]Section 3306(a) defines "employer" as "any person who (A) during any calendar quarter in the calendar year or the preceding calendar year paid wages of $1,500 or more, or (B) on each of some 20 days during the calendar year or during the preceding calendar year, each day being in a different calendar week, employed at least one individual in employment for some portion of the day." § 3306(a)(1). The parties do not make any arguments based on this definition, and its primary purpose appears to be providing a limited exclusion from FUTA for very small employers. *See Cencast Servs., L.P. v. United States*, 62 Fed. Cl. 159, 178 (2004) (noting that, prior to a 1970 amendment, the term "employer" had been defined solely in terms of the number of persons in the employ of the employer for a certain period of time, and that the amendment was intended to narrow the scope of the "small employer" exception).

**[2]** Central to this case is FUTA's definition of "employment." Section 3306(c) defines "employment" as, in relevant part, "any service, of whatever nature, performed after 1954 by an employee for the person employing him, irrespective of the citizenship or residence of either." § 3306(c). FUTA incorporates by reference the definition of "employee" from FICA, § 3121(d), which defines the term in relevant part as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." *See* § 3306(i) (referring to § 3121(d)).

Section 3306(c) contains a number of exceptions to the definition of employment. *See* § 3306(c)(1)-(21). Services falling under one of these exceptions are not considered "employment" and, therefore, do not give rise to FUTA tax liability. Among § 3306(c)'s exceptions is the governmental and tribal employer exception, which excludes from "employment"

> service[s] performed in the employ of a State, or any political subdivision thereof, or in the employ of an Indian tribe, or any instrumentality of any one or more of the foregoing which is wholly owned by one or more States or political subdivisions or Indian tribes . . . .

§ 3306(c)(7).

**[3]** This case turns on the interpretation of § 3306(c)(7)'s exception from "employment" of services performed "in the employ of" an Indian tribe. The government argues—and the district court agreed—that this exception applies only where a tribe is the common-law employer of a worker; the Tribe, on the other hand, contends that the phrase "in the employ of" also covers situations where a tribe is only the statutory employer. A "common-law employer" is the employer under the general common law of agency. *See Cmty. for Creative Non-Violence v. Reid* (*CCNV*), 490 U.S. 730, 740 (1989). In

contrast, a "statutory employer" is merely a paymaster—"the person having control of the payment of . . . wages," where "the person for whom [an] individual performs or performed . . . services does not have control of the payment of the wages for such services." § 3401(d)(1).

The Tribe asks us to hold that an Indian tribe or instrumentality thereof is exempt from paying FUTA taxes whenever it acts as a statutory employer—in other words, whenever it controls the payment of wages for services performed for another entity. To support this argument, the Tribe relies primarily on the Supreme Court's decision in *Otte v. United States*, 419 U.S. 43 (1974), which extended the application of § 3401(d)(1)'s definition of "employer" to the context of FICA. In *Otte*, a bankruptcy case, the Supreme Court had to decide whether priority claims for wages earned prior to an employer's bankruptcy, but paid by the trustee after the inception of bankruptcy proceedings, were subject to withholding of income and FICA taxes. 419 U.S. at 44. Section 3402(a) requires "every employer making payment of wages" to "deduct and withhold [income tax] upon such wages," and § 3102(a) provides that "[FICA tax] shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid." Otte, the bankruptcy trustee, argued that he did not have to withhold income or FICA taxes because he was not the "employer" and because the claim payments were not "wages." 419 U.S. at 49. The Court rejected these arguments, pointing to § 3401(d)'s definition of "employer":

> For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer"

(except for purposes of subsection (a)[**3**]) means the person having control of the payment of such wages[.]

§ 3401(d); 419 U.S. at 49. The Court explained that this definition "obviously was intended to place responsibility for withholding at the point of control." 419 U.S. at 50. On its face, § 3401(d)'s definition of "employer" applies only to Chapter 24, governing income tax withholding. *See* § 3401(d) ("For purposes of *this chapter*, the term employer means . . . ." (emphasis added)). Although FICA is a different chapter, and although FICA does not contain any equivalent definition of "employer," the Court held that the trustee was also responsible for withholding FICA taxes because "th[e] term [employer] is not to be given a narrower construction for FICA withholding than for income tax withholding." 419 U.S. at 51. As the trustee, Otte controlled the payment of the wage claims, and therefore had responsibility as the § 3401(d)(1) statutory employer for withholding income and FICA taxes. *Id.*

Following *Otte*, courts have further extended the application of § 3401(d)(1)'s definition, concluding that a statutory employer is responsible not only for withholding income tax and the employee's portion of FICA tax, but also for paying FUTA tax and the employer's portion of FICA tax. *See Winstead v. United States*, 109 F.3d 989, 991 (4th Cir. 1997); *Melamed v. United States (In re Laub Baking Co.)*, 642 F.2d 196, 199 (6th Cir. 1981); *Evans v. IRS (In re Sw. Rest. Sys., Inc.)*, 607 F.2d 1237, 1240 (9th Cir. 1979); *United States v. Ennis (In re Armadillo Corp.)*, 561 F.2d 1382, 1386 (10th Cir. 1977).

As previously noted, FUTA imposes a tax on "every

---

[**3**]Section 3401(a) defines "wages" for purposes of Chapter 24 as "all remuneration . . . for services performed by an employee for his employer."

employer . . . with respect to having individuals in his employ, equal to [a percentage] of the total wages . . . paid by him during the calendar year with respect to employment." § 3301. FICA uses nearly identical wording. *See* § 3111. In holding that a statutory employer is responsible for paying FUTA and FICA taxes, neither *Otte* nor its progeny relied on any specific phrasing in those sections. Instead, the extension of § 3401(d)(1)'s definition of "employer" appears to rest on a practical concern: "When it finally comes to the point of deducting from the wages earned that part which belongs to the United States and matching it with the employer's share of FICA taxes, the only person who can do that is the person who is in 'control of the payment of such wages.' " *Sw. Rest. Sys.*, 607 F.2d at 1240.

Although the extension of § 3401(d)(1)'s definition of employer does not derive from any specific text found in FUTA, the Tribe argues that under *Otte* and its progeny, the phrase "in his employ" in § 3301 encompasses both statutory and common-law employers. The governmental and tribal exception uses a nearly identical phrase, excepting from "employment" services performed "in the employ of" an Indian tribe. § 3306(c)(7). The Tribe argues that "in the employ of" should mean the same thing as "in his employ"; in other words, if a statutory employer has workers "in his employ" for purposes of liability under § 3301, then those workers should be considered "in the employ of" the statutory employer for purposes of § 3306(c)(7)'s exception.

It is true that "in his employ" and "in the employ of" are practically identical, and "[i]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993) (citations and internal quotation marks omitted). But *Otte* and its progeny never expressly held that the specific phrase "in his employ" refers to the statutory employer; instead, the Supreme Court held that the term "employer" should not be

given a narrower construction for FICA withholding purposes than for income tax withholding purposes. *Otte*, 419 U.S. at 51; *see also* § 3102(a) (providing that the employee's portion of FICA "shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid."). So *Otte* and its progeny defined "employer," but not "in his employ."

**[4]** We conclude that the cases extending § 3401(d)(1)'s definition of "employer" to FICA and FUTA merely hold that a statutory employer has responsibility for reporting and remitting those taxes; these cases do not change the fact that FUTA liability arises out of the common-law employment relationship. At least one court has already held that there is no basis for further extending § 3401(d)(1)'s definition of "employer." *See Cencast Servs., L.P. v. United States*, 62 Fed. Cl. 159, 180 (2004) (declining to extend § 3401(d)(1)'s definition of "employer" for purposes of calculating "total wages" paid under FUTA and FICA and, instead, looking to the common-law employers to calculate wages). In other words, it is the common-law employment relationship that triggers the FUTA tax; *Otte* and its progeny merely hold that the statutory employer must pay that tax for the practical reason that responsibility for reporting, withholding, and paying employment taxes should be centralized with the entity that controls the payment of wages. *See Sw. Rest. Sys.*, 607 F.2d at 1240 ("No one other than the person who has control of the payment of the wages is in a position to make the proper accounting and payment to the United States.").

**[5]** We hold that § 3306(c)(7)'s exception unambiguously applies only where an Indian tribe acts as a common-law employer. The context of the exception—a subparagraph of the definition of "employment," which incorporates the common-law element through the use of the term "employee" —compels this interpretation. Because we conclude that § 3306(c)(7) is not ambiguous, we do not apply the canon of construction requiring courts to resolve statutory ambiguities

in favor of Indians. *See South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986) ("The canon of construction regarding the resolution of ambiguities in favor of Indians . . . does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of Congress.").

Similarly, because we conclude that § 3306(c)(7) is not ambiguous, we need not rely on legislative history as an aid to interpretation. *See Green*, 707 F.2d at 405. In any event, the legislative history is not particularly illuminating in this case. Nothing in the legislative history of either FUTA or § 3401(d)(1) suggests that the phrase "in the employ of," as it appears in § 3306(c)(7), was meant to encompass statutory employment relationships. Nor does the history of § 3306(c)(7) support such a conclusion. Prior to 2000, § 3306(c)(7) excepted only services performed in the employ of a State or any political subdivision thereof. Congress amended § 3306(c)(7) in 2000 by inserting "or in the employ of an Indian tribe" to the exception. The House Conference Report on the amendment states:

> Both non-profit organizations and State and local governments are not required to pay FUTA taxes. Instead they may elect to reimburse the unemployment compensation system for unemployment compensation benefits actually paid to their former employees. Generally, Indian tribes are not eligible for the reimbursement treatment allowable to non-profit organizations and State and local governments. . . . However, H.R. 5542 provides that an Indian tribe (in [sic] including any subdivision, subsidiary, or business enterprise chartered and wholly owned by an Indian tribe) is treated like a non-profit organization or State or local government for FUTA purposes (i.e., given an election to choose the reimbursement treatment).

H.R. Conf. Rep. 106-1033, at *1000 (2000). The House Conference Report demonstrates that Congress intended for Indian tribes to be treated like states and other political subdivisions with respect to FUTA tax, but it does not follow that Congress intended the governmental and tribal employer exception to extend to situations where either a state or an Indian tribe was a statutory employer, but not a common-law employer.

**[6]** We note the Tribe's argument that the IRS itself adopted the Tribe's interpretation of § 3306(c)(7) in a private letter ruling. *See* I.R.S. Priv. Ltr. Rul. 9237023 (Sept. 11, 1992). But private letter rulings may not by used or cited as precedent, so this ruling does not influence our decision. § 6110(k)(3); *see also Lucky Stores, Inc. v. Comm'r.*, 153 F.3d 964, 967 n.5 (9th Cir. 1998) ("Taxpayers other than those to whom such rulings . . . were issued are not entitled to rely on them."). The Tribe also argues that the district court erred in citing five pre-*Otte* revenue rulings for the proposition that the IRS has historically focused on the common-law employer as the relevant employer for purposes of calculating FUTA liability. The rulings were all issued before *Otte* and assumed that because FICA and FUTA did not contain a definition of employer like that found at § 3401(d)(1), a statutory employer is never the employer for FICA or FUTA purposes. *See* S.S.T. 154, 1937-1 C.B. 332; Rev. Rul. 54-471, 1954-2 C.B. 348; Rev. Rul. 57-145, 1957-1 C.B. 332; Rev. Rul. 57-316, 1957-2 C.B. 626; and Rev. Rul. 69-316, 1969-1 C.B. 263. We question the continued viability of these rulings post-*Otte*, but we need not rely on them because we find § 3306(c)(7) to be unambiguous when read in context of FUTA's definition of "employment."

Finally, the Tribe cites a decision by the California Unemployment Insurance Appeals Board as supporting its interpretation of § 3306(c)(7). In that decision, the administrative law judge concluded that Mainstay was eligible to pay into the state unemployment fund using a reimbursement method

instead of a contribution method. Like the district court, we decline to follow the ALJ's decision, which was based on Mainstay's status as a "leasing employer" or "temporary services employer" under California Unemployment Insurance Code section 606.5, not on any interpretation of § 3306(c)(7). FUTA contains no provision analogous to section 606.5. While it is true that employers are eligible to elect reimbursement financing in California only if they are exempt under § 3306(c)(7), the ALJ's decision contains no analysis of the federal statute and therefore provides no persuasive support for the Tribe's argument.

## C. Mainstay's Relationship With Its Leased Employees

Having held that § 3306(c)(7)'s exception applies only where an Indian tribe or its instrumentality is a common-law employer, we must determine whether Mainstay qualifies for the exception. The parties do not dispute the facts underlying this determination; only the legal significance of those facts is at issue.

In *CCNV*, the Supreme Court listed a number of factors to be considered in determining whether an individual is a common-law employee:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular

> business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

490 U.S. at 751-52 (footnotes omitted). No one factor is determinative. *Id.* at 752. Treasury regulations also provide a test for determining the existence of a common-law employment relationship:

> Generally [the legal relationship of employer and employee] exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services.

Treas. Reg. § 31.3306(i)-1(b).

[7] The multi-factor tests articulated in *CCNV* and Treasury Regulation § 31.3306(i)-1(b) are directed at determining whether an individual is an employee or an independent contractor. Most of the cases applying this test involve a simple two-party relationship: worker and hiring party. As we have observed, "the assessment of the triangular relationship between worker, temporary employment agency and client is

not wholly congruent with the two-party relationship involving independent contractors." *Vizcaino v. U.S. Dist. Court*, 173 F.3d 713, 723 (9th Cir. 1999). The employee—independent contractor dichotomy is not at play in such a situation. A worker may be a common-law employee of both the agency and the client; the two are not mutually exclusive. *Id.*

**[8]** Applying the *CCNV* factors to the undisputed facts presented here, we conclude that Mainstay was a common-law employer of its leased employees.[4] Although the client, not Mainstay, supervised the leased employees on a day-to-day basis, the employees were required to comply with Mainstay's employment policies regarding such issues as smoking, telephone use, timekeeping, and breaks. In this sense, the leased employees were subject to the will and control of *both* Mainstay and the client company. Moreover, Mainstay set the level of compensation and had ultimate responsibility for paying employees—if a client failed to pay Mainstay's invoice, Mainstay paid the employees' wages from its own bank account. Mainstay treated the leased employees as its own for tax purposes, issuing W-2 forms, withholding and remitting income taxes, and paying the employer portion of FICA taxes. Mainstay provided employment benefits, including health insurance, life insurance, and a 401(k) retirement plan. Under its contracts with clients, Mainstay retained the rights to recruit, screen, and hire employees for assignment at clients' businesses; to terminate employees; to administer all unemployment claims; and to reassign employees to other clients if necessary. On several occasions, Mainstay defended against lawsuits brought by present or former employees arising out of their employment. All of these factors lead us to conclude that Mainstay was a common-law employer of its leased employees. The fact that Mainstay did not furnish tools or that the employees did not render their services on Mainstay prop-

---

[4]We need not, and do not, decide whether the leased employees were also common-law employees of the client companies.

erty is not sufficient to tip the balance away from this conclusion.

### III.   Conclusion

**[9]** Services performed "in the employ of an Indian tribe" are excepted from FUTA's definition of "employment" by § 3306(c)(7) only where a tribe or its instrumentality is a common-law employer of the worker performing the services. Because Mainstay was a common-law employer of its leased employees during the years in question, it was not required to pay FUTA taxes with respect to those employees. We reverse and remand with instructions to enter judgment for the Tribe.

**REVERSED and REMANDED.**