# United States Tax Court

166 T.C. No. 7

BARRETT BUSINESS SERVICES, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 6616-24.                                   Filed March 30, 2026.

————

P is a professional employer organization. Its clients (worksite employers) hire workers (worksite employees) who provide services for and at the direction of the worksite employer. P handles payroll and employment tax reporting on behalf of its clients.

P claimed the Work Opportunity Tax Credit (WOTC) and the Empowerment Zone Employment Credit (EZEC) for qualifying worksite employees. R disallowed the credits, determining that only a common law employer is eligible for those credits. P claims it is eligible for those credits as either a statutory employer or as an agent of the common law employer.

*Held*: Common law employers are eligible for WOTC; statutory employers and agents of common-law employers are not.

*Held, further*, common law employers are eligible for the EZEC; statutory employers and agents of common law employers are not.

————

*George B. Abney* and *Brody A. Klett*, for petitioner.

*Aimee R. Lobo-Berg*, *Michelle R. Weigelt*, and *Jeremy H. Fetter*, for respondent.

OPINION

BUCH, *Judge*: Barrett Business Services, Inc. (Barrett), is a professional employer organization (PEO) based in Vancouver, Washington. Barrett claimed the Work Opportunity Tax Credit (WOTC) and the Empowerment Zone Employment Credit (EZEC) with respect to its clients' worksite employees for 2017 through 2020 (years in issue). The Commissioner issued Barrett a Notice of Deficiency for the years in issue disallowing the credits. Barrett challenged the Commissioner's Notice arguing it was entitled to the credits as a statutory employer pursuant to section 3401(d)(1).[1]

Pending before the Court are cross-Motions for Partial Summary Judgment disputing whether a statutory employer pursuant to section 3401(d)(1) can claim the WOTC or the EZEC as an "employer" pursuant to sections 51, 1396, and 1397. It cannot. The text of the provisions authorizing these credits, backed up by the legislative history, points toward the credits' being available only for common law employers. We will grant the Commissioner's Motion and deny Barrett's Motion.

*Background*

The facts below are derived from the parties' pleadings and Motion papers. *See* Rule 121(c)(1). They are stated solely for the purpose of deciding the pending Motions and are not findings of fact for this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code or I.R.C.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

Barrett is a PEO based in Vancouver with its principal place of business in the State of Washington when it filed its Petition. Barrett is not a certified PEO pursuant to section 7705.[2]

Barrett provides employment-related services to small and mid-sized businesses throughout the United States. Those services are provided with respect to "worksite employees" who work for and at the sites of Barrett's clients. The clients supervise the day-to-day activities of the worksite employees.

Barrett's clients are the worksite employers. Although the specific services provided to any particular client may vary, Barrett's services always include: (1) onboarding worksite employees into Barrett's payroll system; (2) processing and paying wages; and (3) withholding, paying, and reporting all applicable federal, state, and local taxes and unemployment contributions with respect to such wages, where required. In addition, Barrett may also (1) provide and administer employee benefits including retirement programs for worksite employees; (2) manage the costs of employment and employee benefits; (3) advise on human resources issues; (4) provide and administer workers' compensation insurance and claims; (5) advise on workplace safety and risk management; (6) recruit worksite employees; and (7) provide training systems and services. Barrett does not supervise the day-to-day activities of the worksite employees.

Barrett claimed the WOTC and the EZEC with respect to its clients' worksite employees on its returns for the years in issue.[3] The WOTC allows employers to claim a tax credit for a percentage of wages paid to individuals of a "targeted group." *See* I.R.C. §§ 38(a), (b)(2), 51(a) and (b)(1). Individuals of a "targeted group" include certain veterans, ex-felons, individuals with disabilities, or long-term unemployment recipients. I.R.C. § 51(d)(1). The EZEC allows employers to claim a tax credit for a percentage of qualified zone wages paid for services performed by qualified zone employees who both live and work in an empowerment zone. *See* I.R.C. §§ 38(a), (b)(9), 1396(a), (c)(1), (d)(1). An empowerment zone is an area suffering from high poverty and unemployment in an urban or rural area designated under section 1391(a) by either the Secretary of Housing and Urban Development or

---

[2] Certified PEOs are not eligible to claim the WOTC or the EZEC. *See* I.R.C. § 3511(d).

[3] For 2018, Barrett claimed the EZEC on its Form 1120–X, Amended U.S. Corporation Income Tax Return.

the Secretary of Agriculture. *See* Rev. Proc. 2021-18, § 2.01, 2021-15 I.R.B. 1007, 1007; H.R. Rep. No. 103-111, at 792 (1993), *as reprinted in* 1993-3 C.B. 167, 368; *see also* I.R.C. § 1393.

When one of Barrett's clients hires a new worksite employee, Barrett requires its client to prepare a new hire packet. That packet includes a questionnaire that, once completed, provides information to indicate whether the worksite employee is a member of a targeted group. If the worksite employee may be a member of a targeted group, Barrett and its client work together to verify whether the worksite employee is, in fact, a member of a targeted group.

Barrett claimed the WOTC and the EZEC on its returns for its clients' worksite employees who were members of targeted groups.

The Commissioner issued a Notice of Deficiency to Barrett for the years in issue, disallowing Barrett's claimed WOTC and EZEC, resulting in a deficiency for each year.[4] The Commissioner determined that Barrett could not claim the WOTC because it was not a common law employer of the worksite employees and it was not a statutory employer pursuant to section 3401(d)(1). The Commissioner also determined Barrett could not claim the EZEC because it was not an employer that paid or incurred qualified zone wages and because the services performed by qualified zone employees were not provided within an empowerment zone. Barrett filed a Petition challenging the Commissioner's determinations, specifically challenging the assertion that it is not a statutory employer.

Pending before the Court are Cross-Motions for Partial Summary Judgment. In his Motion the Commissioner asks the Court to conclude that a statutory employer under section 3401(d)(1) is not entitled to claim the WOTC or the EZEC with respect to wages paid on behalf of its clients' workers. Barrett filed the Cross-Motion and Response to the Commissioner's Motion arguing that limiting the WOTC and the EZEC to common law employers would "thwart Congressional intent." Additionally, Barrett argues that it can claim the credits as a section 3504 agent and under the plain meaning of sections 51(k)(2), 1396, and 1397. The Commissioner responded to Barrett's Motion, arguing that the provisions in the WOTC and the EZEC and the legislative history

---

[4] The Notice of Deficiency also included adjustments from a reduction in research expenses for 2017. Because the parties' Motions for Partial Summary Judgment do not concern these adjustments, we need not address them for purposes of this Opinion.

"show Congress's intent to provide the credits to common law employers" and that "[n]either I.R.C. § 3401(d)(1) nor I.R.C. § 3504 shift the 'employer' away from the common law employer for purposes of the [WOTC] and EZEC."

*Discussion*

I.  *Summary Judgment Standard*

Summary judgment may be granted where a party shows that there is no genuine dispute as to any material fact and that a decision may be rendered in favor of that party as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. The burden is on the moving party to demonstrate that there is no genuine dispute as to any material fact. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985). In deciding whether to grant summary judgment, the factual materials and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. *Bond v. Commissioner*, 100 T.C. 32, 36 (1993).

II.  *General Business Credits*

Section 38 permits taxpayers to claim a variety of business credits against federal income tax. Among those credits are the section 51 WOTC and the section 1396 EZEC. Barrett claimed both credits with respect to its clients' worksite employees for the years in issue.

A.  *The Work Opportunity Tax Credit*

The WOTC provides that employers may receive a credit equal to 40% of qualified first-year wages for such year. I.R.C. § 51(a). Qualified wages are "wages paid or incurred by the employer during the taxable year to individuals who are members of a targeted group." I.R.C. § 51(b)(1). Members of targeted groups include the following individuals:

(A) a qualified IV-A recipient,
(B) a qualified veteran,
(C) a qualified ex-felon,
(D) a designated community resident,
(E) a vocational rehabilitation referral,
(F) a qualified summer youth employee,
(G) a qualified supplemental nutrition assistance program benefits recipient,
(H) a qualified [Supplemental Security Income (SSI)] recipient,

> (I) a long-term family assistance recipient, or
> (J) a qualified long-term unemployment recipient.

I.R.C. § 51(d)(1). The purpose of the credit is to encourage employers to hire employees who are members of the targeted groups.

The credit was originally enacted in 1977 as the New Jobs Credit. Tax Reduction and Simplification Act of 1977, Pub. L. No. 95-30, § 202(b), 91 Stat. 126, 141. Its purpose was to address high unemployment by providing an "incentive to hire disadvantaged workers, whose compensation is lower than average." H.R. Rep. No. 95-27, pt. 1, at 51 (1977), *as reprinted in* 1977-1 C.B. 501, 513. This credit was not limited to any specific type of employee other than providing a special additional credit for handicapped employees. Tax Reduction and Simplification Act § 202(b), 91 Stat. at 142–43. Once the unemployment rate had sufficiently declined, Congress amended section 51, relabeling it the Targeted Jobs Credit and added an additional requirement that employers hire specific types of individuals in order to get the credit. Revenue Act of 1978, Pub. L. No. 95-600, § 321, 92 Stat. 2763, 2830–31. The purpose of the change was to "focus employment incentives on those individuals who have high unemployment rates even when the national unemployment rate is low and on other groups with special employment needs." H.R. Rep. No. 95-1445, at 90 (1978), *as reprinted in* 1978-3 C.B. (Vol. 1) 181, 264.

In 1996, Congress replaced the targeted jobs credit with the WOTC. Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1201, 110 Stat. 1755, 1768. Congress intended for the new program to focus on "individuals with poor workplace attachments, streamlin[ing] administrative burdens, [and] promot[ing] longer-term employment" in order to reduce the cost of the previous program. H.R. Rep. No. 104-586, at 75–76 (1996), *reprinted in* 1996-3 C.B. 331, 413–14. The targeted groups eligible for the credit remained similar to the previous program.[5]

---

[5] The targeted groups in the targeted jobs credit program included individuals who were vocational rehabilitation referrals, economically disadvantaged youth, economically disadvantaged Vietnam-era veterans, SSI recipients, general assistance recipients, youth participating in cooperative education programs, and economically disadvantaged ex-convicts. Revenue Act § 321, 92 Stat. at 2831. The targeted groups in the 1996 enacted work opportunity tax credit program included individuals who were qualified IV-A recipients, qualified veterans, qualified ex-felons, high-risk youth, vocational rehabilitation referrals, qualified summer youth employees, or qualified food stamp recipients. Small Business Job Protection Act § 1201, 110 Stat. at 1768.

B.     *The Empowerment Zone Employment Credit*

The EZEC provides that "any employer" may receive a credit equal to 20% of qualified zone wages paid or incurred during the year the credit is claimed. I.R.C. § 1396(a) and (b). "Qualified zone wages" are "any wages paid or incurred by an employer for services performed by an employee while such employee is a qualified zone employee" and not exceeding $15,000. I.R.C. § 1396(c)(1) and (2). A "qualified zone employee" includes any employee who lives and provides services to an employer within an empowerment zone. I.R.C. § 1396(d). For purposes of the EZEC, wages has the same meaning as in section 51 and rules similar to the rules of section 51(k) apply. I.R.C. § 1397(a), (c). However, wages that are used for the WOTC cannot be applied to the EZEC. I.R.C. § 1396(c)(3).

The purpose of the credit is to encourage employers to hire individuals living in economically distressed areas so as to revitalize those areas. Enacted in 1993, Congress created empowerment zones and the accompanying federal tax incentives to revitalize distressed areas "through expanded business and employment opportunities, especially for residents of . . . distressed areas." H.R. Rep. No. 103-111, at 791, 1993-3 C.B. at 367; *see also* H.R. Rep. No. 103-213, at 702 (1993). Congress originally intended to have the credit phase out in 2004, but these empowerment zones and credits still exist today. *See* I.R.C. § 1396; H.R. Rep. No. 103-111, at 794, 1993-3 C.B. at 370; Dep't of Hous. & Urb. Dev., Geospatial Data Storefront, https://hudgis-hud.opendata.arcgis .com/ (search in search bar for "Empowerment Zones and Enterprise Communities") (last visited March 23, 2026).

III.     *Common Law Versus Statutory Employers*

Sections 51, 1396, and 1397 do not define "employer" for purposes of these credits. The Supreme Court has explained that "where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of those terms," and that "when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992) (citation modified). Consequently, in the absence of a definition, we look to common law concepts to determine the existence

of an employer-employee relationship. *Matthews v. Commissioner*, 92 T.C. 351, 360 (1989), *aff'd*, 907 F.2d 1173 (D.C. Cir. 1990).

Whether a common law employer-employee relationship exists is a question of fact. *Pro. & Exec. Leasing, Inc. v. Commissioner*, 89 T.C. 225, 232 (1987), *aff'd*, 862 F.2d 751 (9th Cir. 1988). This Court has looked to the following factors to determine the existence of common law employment relationship:

> (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether or not the principal has the right to discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating.

*Weber v. Commissioner*, 103 T.C. 378, 387 (1994), *aff'd per curiam*, 60 F.3d 1104 (4th Cir. 1995); *accord Pro. & Exec. Leasing, Inc.*, 89 T.C. at 232; *Simpson v. Commissioner*, 64 T.C. 974, 984–85 (1975). No single factor is dispositive. *Simpson*, 64 T.C. at 985.

Barrett argues that the section 3401(d)(1) definition of a statutory employer should be applied to sections 51, 1396, and 1397. Barrett states that because sections 51, 1396, and 1397 do not define "employer" for purposes of claiming the WOTC and the EZEC, "courts may look to a definition provided in a related statute dealing with similar subject matter." Barrett argues that because section 3401 "addresses tax payment obligations arising from the payment of wages" and sections 51, 1396, and 1397 "address tax credits arising from the payment of wages," statutory interpretation "supports interpreting the term 'employer' as used in §§ 51(k)(2), 1396, 1397, to include statutory employers as defined in § 3401(d)."

Barrett additionally points to section 51(k)(2) in support of its argument that a statutory employer is the "employer" for purposes of these credits. Section 51(k)(2) provides that for treatment of employees performing services for other persons,

> [n]o credit shall be determined under this section with respect to remuneration paid by an *employer* to an *employee* for services performed by such employee for *another person* unless the amount reasonably expected to

> be received by the employer for such services from such other person exceeds the remuneration paid by the employer to such employee for such services.

(Emphasis added.) Barrett argues that this provision uses "employer" in the context of a three-party employment arrangement, and accordingly "employer" for purposes of the credits should not be a common law employer. Accordingly, Barrett argues an employer other than the common law employer can claim the credit.[6]

Barrett is pointing in the wrong direction. Section 3401(d)(1) provides:

> Sec. 3401(d). Employer.—*For purposes of this chapter*, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—
>
> > (1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" . . . means the person having control of the payment of such wages . . . .

(Emphasis added.) This provision is found in subtitle C, which relates to employment taxes, chapter 24, which relates to the collection of income tax at the source on wages. Of course, the location or grouping of Code sections, in and of itself, is not to be given legal effect. *See* I.R.C. § 7806(b). But section 3401(d)(1) provides that the term "employer" is defined "[f]or purposes of this chapter." Sections 51, 1396, and 1397 are in subtitle A, which relates to income taxes, chapter 1, which relates to normal taxes and surtaxes. We see no reason to substitute a term that is defined for purposes of employment taxes into provisions that determine income tax credits. We read "employer" to mean "common law

---

[6] Barrett argues that the holding in *TriNet Group, Inc. v. United States*, 979 F.3d 1311, 1318 (11th Cir. 2020), that a section 3401(d)(1) statutory employer is eligible to claim the credit under section 45B, should also apply to the WOTC and the EZEC. That case is inapposite. The credits at issue in that case were predicated on an amount "paid or incurred by the taxpayer" as distinguished from the credits at issue here, which are predicated on "wages paid or incurred by the employer." *Compare* I.R.C. § 45B(a), *with* I.R.C. §§ 51(b)(1), 1396(c)(1).

employer," i.e., the employer receiving services from the individuals the credit is intended to help.

"For those who consider legislative history relevant," *Warger v. Shauers*, 574 U.S. 40, 48 (2014), we note that this reading of "employer" is supported by the legislative history. Congress enacted these credits to encourage employers to hire disadvantaged individuals who live and provide services in economically distressed areas. Congress intended the credit to help these disadvantaged individuals and to revitalize these economically distressed areas. Barrett provides employment-related services to its clients, which include payroll services. Barrett is not the entity that is providing the work opportunity for disadvantaged individuals or in distressed economic areas. A statutory employer who pays wages for services provided to another person is not Congress's intended beneficiary of these credits.

We decline to extend the definition of "employer" under sections 51, 1396, and 1397 to include section 3401(d)(1) statutory employers. Accordingly, we will grant the Commissioner's Motion for Partial Summary Judgment.

IV. *Barrett's Additional Arguments*

Barrett requests that the Court determine that section 3504 agents are eligible to claim the WOTC and the EZEC. Section 3504 provides:

> In case a fiduciary, agent, or other person has the control, receipt, custody, or disposal of, or pays the wages of an employee or group of employees, employed by one or more employers, the Secretary, under regulations prescribed by him, is authorized to designate such fiduciary, agent, or other person to perform such acts as are required of employers under this title and as the Secretary may specify. Except as may be otherwise prescribed by the Secretary, all provisions of law (including penalties) applicable in respect of an employer shall be applicable to a fiduciary, agent, or other person so designated but, except as so provided, the employer for whom such fiduciary, agent, or other person acts shall remain subject to the provisions of law (including penalties) applicable in respect of employers.

Barrett argues that it is an agent under section 3504. Barrett's argument continues, that "all provisions of law" that apply to employers, including the WOTC and the EZEC, likewise apply to Barrett as the agent of the employers. The Commissioner argues that a section 3504 agent is not eligible for the WOTC or the EZEC. If such an agent is eligible for the WOTC or the EZOC, the Commissioner observes that whether Barrett is a section 3504 agent is a question of fact that remains in dispute.

On the latter point, the record before us does not include information that would enable the Court to conclude that Barrett is a section 3504 agent. But even if it were such an agent, it would not be entitled to the WOTC or the EZEC. Section 3504 authorizes an agent of an employer to perform acts required of employers. In taking on those obligations, the agent becomes subject to other provisions of law, including penalties, that are applicable "in respect of an employer." We interpret this to mean with respect to employers in their capacity as employers. The WOTC and the EZEC are income tax credits; they are not other provisions of law applicable with respect to employers in their capacities as such.[7]

Barrett additionally argues that the plain meaning of section 51(k)(2) is that someone other than an employer may claim the WOTC and the EZEC. The text of the statute does not support Barrett's argument. Section 51(k)(2) provides:

> No credit shall be determined under this section with respect to remuneration paid by an employer to an employee for services performed by such employee for another person unless the amount reasonably expected to be received by the employer for such services from such other person exceeds the remuneration paid by the employer to such employee for such services.

---

[7] Under Barrett's proposed reading of the Code, both Barrett and its clients would be entitled to the credits at issue. Section 3504 provides that, in addition to the agent, the employer "shall remain subject to the provisions of law (including penalties) applicable in respect of employers." If section 3504 is not limited to matters where an employer is acting in its capacity as an employer, then the eligibility for the credits at issue would both be extended to agents while simultaneously remaining available to the employer. Petitioner has not directed us to anything indicating that Congress intended this result.

Barrett suggests that this provision "could not be more clear." Under Barrett's view,

> [s]ection 51(k)(2) contemplates a three-party employment arrangement involving, (1) an employer, (2) an employee, and (3) another person. In that arrangement, the employer pays the employee, and the employee provides services to another person. The employer in that arrangement cannot be the common law employer because he or she is not the person for whom the employee performs services. Instead, the employee performs services for another person. Because another person received services from the employee, that person must be the common law employer.

This last sentence is where Barrett's logic breaks down. The mere performance of services for a third party does not mean that the third party becomes the common law employer.[8] A multifactor test is used to identify a common law employer, and no single factor is dispositive. *See supra* Part III. Section 51(k) itself makes a clear distinction between the employer and the third party; it consistently refers to the third party as "another person." Further, Congress made its intent clear, writing in its Conference Report:

> [T]he conference agreement provides that the credit is allowed with respect to the remuneration of an employee who performs services for another person only if the payment by the other person to the employer exceeds the remuneration paid by the employer to the employee. This change is intended to prevent employers from lending or donating the services of individuals on their payroll to tax-exempt or other organization which do not have sufficient tax liability to take advantage of the credit.

---

[8] The Commissioner cites the U.S. Court of Appeals for the Ninth Circuit's holding in *Blue Lake Rancheria v. United States*, 653 F.3d 1112 (9th Cir. 2011), stating that the section 3306(c)(7) exception from Federal Unemployment Tax Act (FUTA) taxes for services performed "in the employ" of an Indian tribe applies when the "Indian tribe acts as a common-law employer." *Blue Lake Rancheria*, 653 F.3d at 1118. Barrett argues that the Commissioner's reliance on *Blue Lake* is misplaced as the Ninth Circuit did not have to consider terms in section 51(k)(2), which contemplates a three-party arrangement. Barrett's reading of section 51(k)(2), however, is inconsistent with the text of the statute, and we therefore do not need to address the difference between FUTA and sections 51, 1396, and 1397.

H.R. Rep. No. 98-861, at 1254 (Conf. Rep.), *as reprinted in* 1984-3 C.B. (Vol. 2) 1, 508. The text of section 51(k)(2) does not support Barrett's position, and the legislative history undermines it.

V.      *Conclusion*

Common law employers may claim the WOTC and the EZEC under sections 51 and 1396 if they are otherwise eligible. Someone other than the common law employer is not eligible for these credits merely by virtue of being a statutory employer under section 3401(d)(1) or an agent under section 3504. Accordingly, we will grant the Commissioner's Motion for Partial Summary Judgment and deny Barrett's Motion for Partial Summary Judgment.

To reflect the foregoing,

*An appropriate order will be issued.*